No need then Mr McGowan for you to reserve time. So please proceed. Thank you. Your Honors. Good morning, as you know, I represent appellant Financial Pacific, which was a lien holder against the real property of the Tinsley's and that lien was avoided pursuant to bankruptcy code section 522 F. I'm here needless to say because I want to correct a decision of the lower court that was incorrect. It's about an important decision related to the interplay between foreclosure proceedings and bankruptcy. It's not as surprising. It was a reasonable decision by Judge Clement given how confusing these statutes can be. He also did not have the benefit of a recent case, which explained that the law changed between the time. That the Hager case which he relied upon in his decision. Was passed and his decision last year the in Ray Garcia clear clarified in footnote note 20 that there was a change in the and specifically the change was that a party that issued a notice of intent to bid could not only be a current tenant, but could also be a prospective resident. There was a one digit change in the law that made all the difference because the statute civil code section 2924 HC referred to a different statute 2924 M that applied only to tenants at the time current tenants at the time of the Hager decision decision upon which Judge Clement relied. And after that as noted in Garcia in Ray Garcia footnote 20. They corrected it. I think it was a typo in the original but in any case the Hager decision upon which Judge Clement relied came to the conclusion that this special over bidding process could only be applied where there is a either a bid or notice of intent to bid by a tenant as opposed to a prospective resident. That's kind of the core of the argument, but just to go back a step as you probably are well aware California had well-established process for the interplay between foreclosure and bankruptcy where there was a relation back provision in 2429 HC where if you filed for if there was a foreclosure hearing and then subsequently a bankruptcy and then a trustee recorded a deed based on the within was originally 15 that I went to 21 days that the sale to the purchaser in the foreclosure proceeding. Became final dated related back to the date of the foreclosure proceeding and there's a case been been say Wong that's a really you know, really old 20 year old case that you know, we all relied on until this law changed right because you know, the issue here is not really perfection, which is what the Bevin see one case goes to its finality. When is the sale final? And I think your argument is is that the sale is final when the gavel drops, right? Which was the argument before this whole 29 24th M scheme came into effect as in response to covid right, but after it came into effect, that's not necessarily the case right and it's only the case in particular circumstances, right? You're right in particular circumstances and that gets to the heart of it. And my personal opinion is that all the cases including Hagar that have reviewed this came to the logical decision and the best case is in Ray Stevens, which is the only case that really opined about the current statute with the current facts. But if you go back to in Ray Hagar, this whole question about perfection versus finality and which statute prevails and the arguments made in the hundreds of pages of briefings by the debtors in this matter that the 249 M statute prevails over the 249 age statute, but the Hagar case really addresses the interplay between those two statutes. Let me read with the Hagar cases about that. It says CC section 2924 MC. That's the new promote the resident statute controls finality except in certain circumstances where CC 2924 HC is applicable. So that's the nut of this issue is that where there's this relation back and 2429 HC where that where those facts are met that takes that establishes finality perfection, whatever you call it. It's those are two different things. Finality is the status between the foreclosing party and you know, the party purchasing at the foreclosure sale and the prior owner Perfection is with respect to third parties, right? And so for bankruptcy purposes, it seems to me that what we really worry about is finality because if the sale is not final when a gavel drops and a bankruptcy is filed during this time period, then it's not final as Judge Clement found and then and so the automatic stay comes into into play, right? That is not correct, your honor. I don't think there's a lot of clarity between the use of the words finality and perfection in these statutes and that's what led to some of the confusion but the cases that have addressed it have understood it. If you look at the Stevens case, they find that the finality perfection whatever you want to call it the conveyance occurred is backdated to the date of the foreclosure hearing. But isn't that contingent upon a owner occupant being the successful bidder? Then it relates back. If it's any other eligible bidder, then it doesn't and under 2924 C, it says for the purposes of this subdivision, the trustees sale shall be deemed final upon the acceptance of the last and highest bid and shall be deemed perfected as of 8 a.m. on the actual date of the sale if the deed is recorded within 21 days after the sale and which did not occur in this case because the bankruptcy was filed and because the trustees deed wasn't issued until day 54. So it didn't comply with this requirements of the code, did it? Of the state code. I think you're applying the wrong term. There is a provision that if it is an owner occupant and they do submit an offer within 21 days, they are immediately the prevailing bidder. But what I'm addressing is, you want the gavel to be the defining moment, but the code changed, the legislature changed the code so that it wouldn't become final upon the gavel falling. It would be delayed until such later date and in the interim, a bankruptcy case was filed. What's the effect of that? Is what we, you're telling us to ignore the bankruptcy that the gavel falling is all that's critical, but that's not what the code says. The state code. Not the bank. It's changed. Not only 2429 M, which is the new provisions. They also changed 2429 H C and that has the relation back provision. And in the original iteration of that statute, there was a, I think a typo and that's what the Hager case was based on because it says that the relation back only applies for tenant, current owners. But after Hager was established and upon which the Stevens case is based, they corrected that typo and they said the relation back principle that you could, as long as it's recorded within 60 days, then it relates back to the date of the foreclosure. That applies not just to current tenants, but also to prospective purchasers, such as the one at issue in this case. So there, the relation back provision was not wiped out entirely. It was, it was continued in 2429 H C. And there had been a typo, which the Hager case was based on. The Hager said it was only that the tenant buyer instead of just all eligible bidders, right? Okay. But let me, let me kind of flip this around. The Bevin C1 case was premise on the fact that the sale was final before the bankruptcy case was filed. And so recording the deed to recognize the finality of this, the equitable title passed at the time of the bankruptcy. I mean, excuse me at the time, the gavel fell and under Bevin C1 gavel felt right equitable title pass. All that was left for the debtor was bare legal title, which passed when the deed was recorded and you could record it 15 and then 21 days later and have it relate back. And so you joined at legal and equitable title. That's not the situation we have under 2924 M because the sale is not final when the gavel drops, when you have these other intervening circumstances of which your client, you know, fell into one of those intervening circumstances, right? Or not your client, but the purchaser, your client is the judicial lien holder, right? Let me address, let me read from the Stevens case, which addresses this whole issue about perfection versus finality and what kind of title remained to allow this overbidding process. And Stevens Court writes that upon foreclosure, the debtor still maintains temporary title. It says, at the conclusion of the live auction on April 4, 2024, debtor's loss of title to the property was already locked in place, leaving him with merely temporary title. The only uncertainty was whose name would appear on the trustee's deed. The highest bidder or at the live auction or a subsequent winning bidder such as purchaser. The key to that statement is the debtor had lost the property. And that's my point here. He can't avoid a lien on a property that he no longer had. And what Stevens case says, and that's the only appellate case that has considered this, and they got it absolutely right. I suggest you reread Stevens if you get a chance. But that, you know, there's a kind of temporary title that's similar to the title that someone still has title to their car and then a repo company can take it post-bankruptcy. That's been used. And this whole idea of perfection post-bankruptcy doesn't change the title. But finality does. Well, only… No, because the section 2924F says, title shall remain with the mortgage or trust or successor and interest until the property sale is deemed final as provided in this section. So they don't lose title to the property even though the gavel falls until the sale is final and an intervening bankruptcy occurs. What's the effect on the finality? Well, the title that they had as reflected in the passages I just wrote from Stevens was temporary title. It's not the type of title that means that the prior foreclosure doesn't have effect. And again, I'll reread again what the Hager court says. Actually, I don't want to have you… So it seems like what you're saying is that at the time the gavel fell, there was a sale, right? We don't know yet who is going to own the property because we have to go through this process. But the one thing that we do know is it's not the borrower. Exactly. So your point, I think, Ben, is because of that, the effect of the bankruptcy, there's no effect of the bankruptcy. Is that what your point is? Because we know that it's going to be somebody but not them. The equitable title, whatever you want to call it, never enters the bankruptcy estate and therefore… Because of that. And again, although there is provisions that M prevails, the Hager court itself says that Section 2420 controls finality except in instances where 2924HC is applicable. So there's kind of a carve-out. You can say that there's all these finality provisions in 2924M, but the Hager case is very clear that where 2924HC applies, and that relation back provision in 2924HC determines finality, perfection, whatever you want to call it. So how do you distinguish Applegate, where the California appellate court said that under 2924M, for real property containing one to four residential units, which this is, a foreclosure sale will be deemed final at the conclusion of the public auction only if a prospective owner-occupant is the last and highest bidder, which is not what we had here. I mean, the state appellate court has told us, it has interpreted California law to say the only circumstance it's not final is when the owner-occupant is the last bidder. We know that wasn't the situation here. So how can you say this is going to be final? How do you distinguish Applegate? Well, Applegate is a situation where a house in Mill Valley, there was a sale for $100 for a multimillion-dollar house. And what happened in Appleby is that the trustee canceled the foreclosure sale because it was ridiculous, $100 for a $1.5 million house. And, you know, it's a non-bankruptcy case. Well, it's a question of state law. Shouldn't we defer to state courts on what they think state law means? Well, my reading of Applegate is that they cited it for the proposition that there's still some rights that the debtor and the trustee of the foreclosure proceedings has. Well, I'm not concerned about who cited it for what reason. I'm concerned about the fact that the state appellate court has told us that the only situation in which this is final is if you have a prospective owner-occupant as the last and highest bidder. So if we decided anything else, how would I distinguish that? Well, I think you have to look at the particular facts of what was happening. And there are, even under the 249. So you're saying that's dicta? It wasn't a pronouncement of law in that case? I think you have to look at the facts. And there are several, under 2924M, there are several scenarios where the finality occurs. If the original bidder was an owner-occupant, that's per se, bang, it's theirs. But the other provisions of 2924M deal with different situations and where there is this overbidding process. Right, and the state court has told us in Applegate if any of those other situations happen, it's not final. So what basis would we have to say they were wrong when they said that? I don't think they were addressing a situation where there was a notice of intent to bid filed by a prospective resident like our situation. In this situation, there never, I mean, in the Applegate case, there never was a trustee deed filed. So 2429HC certainly doesn't come into play. The trustee, the foreclosure trustee in Applegate said, this is ridiculous, $100 for a million-dollar-plus house? And he just said, we're not going to go forward with this sale. And so therefore, he never recorded the deed. Under 2429HC, there has to be a trustee's deed recorded. And because there never was anything recorded in Applegate, this possibility of this relation back doesn't come into play. And that's the distinction. All right. Well, we've gone way over your time. Well, thank you very much, Your Honors. We appreciate it. Thank you for the argument. This matter will be submitted. It is, isn't it? And so that concludes our hearing, and so we're adjourned. Thank you. All rise. Court is adjourned.
judges: Brand, Gan, and Pearson